Heidi G. Goebel (Bar No. 10343)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, UT 84111
Telephone: 801-441-9393
hboebel@gapclaw.com

Nathan J. Marcusen (*pro hac vice*)
Isaac W. Messmore (*pro hac vice*)
NELSON MULLINS
RILEY & SCARBOROUGH LLP
1600 Utica Avenue South, Suite 750
Minneapolis, MN 55406
Telephone: 612-464-4500
nathan.marcusen@nelsonmullins.com
ike.messmore@nelsonmullins.com

*Attorneys for Defendant Olivet University*

## IN UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| AVT – NEW YORK, L.P., a Utah limited partnership,<br><br>         Plaintiff,<br>v.<br><br>OLIVET UNIVERSITY, a California corporation,<br><br>         Defendant. | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS TO ENFORCE JUDGMENT**<br><br>Case No. 2:18-cv-00782-JNP-DAO<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Daphne A. Oberg |

## Introduction

Rule 62 of the Federal Rules of Civil Procedure gives the Court broad discretion to grant a stay upon provision of adequate security by the judgment debtor. Here, Plaintiff holds a lien on Olivet University's main campus property, the value of which far exceeds the total amount of the

judgment. Further, in addition to being unnecessary, requiring Olivet University to purchase a bond in the full amount of the judgment would cause extreme financial hardship. The Court should thus grant a stay of all proceedings to enforce the judgment.

In its opposition brief, Plaintiff argues Olivet University has not demonstrated that the lien constitutes adequate security for a stay and that Olivet University has failed to show extreme financial hardship. Both arguments are misplaced. *First*, Olivet University provided unrebutted sworn testimony and documentation establishing that the equity value of the subject property exceeds even Plaintiff's inflated damages figure. And *second*, Olivet University demonstrated through sworn testimony and documentation that purchasing a bond in the full amount of the judgment would cause extreme financial hardship. Indeed, under the multi-factor, discretionary test that many courts use in determining whether the proffered security is adequate for a stay, each factor counsels in Olivet University's favor.

**1. Plaintiff's lien on Olivet University's main campus constitutes adequate security.**

Olivet University demonstrated that Plaintiff's lien on the university's Riverside Campus property constitutes adequate security for the judgment in this case, warranting a stay. *See* Def.'s Mot. to Stay Proceedings [Doc. 178] at 3–5. In its opposition brief, Plaintiff argues that its lien on the Riverside Campus property is inadequate security because (1) it does not think the sworn testimony of Olivet University's Chief Financial Officer is probative of the property's value, and (2) it says other alleged encumbrances on the property reduce the value of AVT's lien such that it does not provide adequate security for the judgment. Both arguments are unavailing.

### a. The sworn testimony of Olivet University's Chief Financial Officer establishes the value of the Riverside Campus property and is supported by a professional appraisal.

Daehong "Barnabas" Jung is Olivet University's Chief Financial Officer, Jung Decl. [Doc. 179] ¶ 4, and as such, is well-positioned to provide evidence related to Olivet University's finances. *E.g.*, *Erhart v. Bofl Holding, Inc.*, 445 F. Supp. 3d 831, 842 (S.D. Cal. 2020) (finding that corporate CFO could testify as to corporate finances and noting that, under Rule 701, "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert" (citation omitted)). Mr. Jung testified from personal knowledge that Olivet University's Riverside Campus is currently valued at $10,646,479.14, based on its sale price. *See id.* ¶ 5. Plaintiff's opposition offers no evidence to rebut this valuation. *See* Opp'n [Doc. 184] at 5–6. Instead, Plaintiff argues that Mr. Jung's sworn testimony on this point is "simply not credible." *Id.* at 5. But Plaintiff's only support for Mr. Jung's supposed lack of credibility is a citation to several webpages alleging malfeasance by Olivet University—not by Mr. Jung himself. *See id.* at 5 n.2. These webpages have no bearing on Mr. Jung's credibility.[1]

Further, financial data support Mr. Jung's valuation. For example, a 2014 appraisal of the property by CBRE Valuation & Auditory Service assessed its value at $10,700,000. *See* CBRE Appraisal, Ex. 1 to Second Jung Decl. Using CBRE's parameters for identifying comparable sales, property values have trended upwards during the intervening nine years. *See* Paulus Decl. Additionally, Olivet University has made over $1 million of improvements to the property since

---

[1] Olivet University has publicly and vehemently denied the allegations contained in these webpages. *See News Release*, Olivet University, https://www.olivetuniversity.edu/news-releases/2022-07-07/ (last visited Feb. 8, 2023).

its purchase. Second Jung Decl. ¶ 3. If anything, Mr. Jung's valuation likely understates the Riverside Campus's current market value.

Because Olivet University provided unrebutted sworn testimony from its CFO that the Riverside Campus is worth $10,646,479.14, and because a value of at least that amount is supported by a professional appraisal valuing the property at $10,700,000 and an upward trend in the sale value of comparable properties, Olivet University has sufficiently established that the value of the property is at least $10,646,479.14.

> b. **The value of the equity in the subject property exceeds the value of the judgment in this case.**

The equity value of the Riverside Campus exceeds the value of the judgment. *See* Def.'s Mot. to Stay Proceedings [Doc. 178] at 4–5. Plaintiff argues in its response that due to alleged additional encumbrances on the property—which Plaintiff apparently found through an online "title search"—its value is insufficient to provide security for the judgment, Opp'n [Doc. 184] at 6, the outstanding portion of which Plaintiff claims is $5,913,389.74 as of January 1, 2023, Schnibbe Decl. [Doc. 184-1) ¶ 16. Plaintiff's argument fails for two reasons: *first*, the online "title search" misstates the amount of the encumbrances, and *second*, Plaintiff's calculation of the amount owed under the judgment is overstated due to an improper calculation of interest.

Plaintiff alleges that there are nearly $2 million in other liens recorded against the subject property. Opp'n at 6, 6 n.3 (alleging a Continental Bank lien of $775,643.70; a Bank of the West lien of $445,730.17; and a Hitachi Capital lien of $758,604.38). This is simply incorrect. The Bank of the West lien was satisfied in its entirety on September 22, 2021. *See* Acknowledgement of Satisfaction of Judgment, Ex. 2 to Second Jung Decl. Likewise, the lawsuit giving rise to the lis pendens was settled and dismissed. Second Jung Decl. ¶ 4. While Continental Bank has a lien on

the property, it is subject to a forbearance agreement, the balance of which is $244,382. Second Jung Decl. ¶ 5. And the lien held by Mitsubishi HC Capital America (formerly known as Hitachi Capital America Corp.) is junior to AVT's lien and is also subject to a forbearance agreement, the balance of which is just $66,000. *See* Schedule B to Opp'n Doc. 184-3; Second Jung Decl. ¶ 6. In sum, whereas Plaintiff alleges nearly $2 million in other liens, the subject property is subject to only a single lien senior to AVT's, and even that lien is currently subject to a forbearance agreement.

Further, Plaintiff's calculation of the current judgment balance of $5,913.389.74 (as of January 1) grossly overstates the amount of the judgment; even if the judgment were affirmed, Plaintiff's miscalculation of post-judgment interest alone wrongly inflates the judgment by over $2 million. *See gen.* Mot. to Vacate [Doc. 174] at 18–19. But regardless, the subject property is worth roughly $10.6 million and is subject to a $3.4 million mortgage. *See* Jung Decl. [Doc. 179] ¶¶ 5–6.[2] Even with the additional amount owed on the senior lien of $244,382, the nearly $7 million in equity in the property is more than sufficient to satisfy even Plaintiff's inflated calculation of the existing judgment:

| **Property Value** | $10,646,479 | | | |
|---|---|---|---|---|
| Mortgage Balance | ($3,434,842) | | | |
| Balance Owed on Senior Liens | ($244,382) | | | |
| Equity | $6,967,255 | > | Plaintiff's inflated judgment calculation | $5,913,389.74 |

---

[2] As of January 4, 2023, Olivet University's outstanding balance on the mortgage was $3,434,842. *See* CommerceWest Loan Statement, Ex. 3 to Jung Decl.

**2. Olivet University adequately demonstrated the financial hardship of posting a bond.**

Olivet University's CFO provided sworn testimony that a forced sale of the Riverside Campus property would be potentially ruinous and that obtaining a monetary bond would cause extreme financial hardship. Jung Decl. [Doc. 179] ¶¶ 8–10. Indeed, Olivet University's financial hardships are at the heart of this litigation. *See* Mot. to Vacate [Doc. 174] at 4–12.

In its opposition, Plaintiff does not explicitly question these well-documented hardships, but instead argues that Olivet University should be required to offer more specific evidence of financial hardship, citing a case from the district of Hawaii. Opp'n [Doc. 184] at 7–8 (citing *Phila. Indem. Ins. Co. v. Ohana Control Sys., Inc.*, No. CV 17-00435-SOM-RT, 2020 WL 3013105 (D. Haw. June 4, 2020) (unpublished). But Plaintiff's reliance on *Philadelphia Indemnity* is misplaced. There, the court employed a rigid framework wherein deviation from the requirement of a full supersedeas bond was allowed only if (1) the debtor could show its ability to pay the judgment was plain, or (2) the posting of a full bond would impose an undue financial burden. *Phila. Indem.*, 2020 WL 3013105, at *2. Courts in the Tenth Circuit do not follow this rigid framework; instead, they have recognized the district courts' "inherent discretionary authority" in setting bond requirements, *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986), and have also used a multi-factor test to determine whether to accept alternative security, *e.g.*, *Becker v. Ute Indian Tribe of Uintah & Ouray Reservation.*, No. 2:16-CV-00958-TC, 2022 WL 1403090, at *3 (D. Utah May 4, 2022) (unpublished).

Further, unlike the judgment debtors in *Philadelphia Indemnity*, Olivet University has adequately demonstrated its dire financial circumstances and the attendant hardships of obtaining a supersedeas bond in the full amount of the judgment. Olivet University's CFO testified that

obtaining a bond would cause extreme financial hardship. Jung Decl. [Doc. 179] ¶¶ 8–10; *see Miami Int'l*, 807 F.2d at 874 (granting stay without a full bond where, as here, judgment debtor stated in an affidavit that he had insufficient assets to post a bond and judgment creditor was allowed to conduct Rule 69 discovery). Olivet University is fighting to stave off the forced sale of its main campus; the very mortgage documents attached to this motion show late fees evidencing Olivet University's financial distress. *See* CommerceWest Loan Statement, Ex. 3 to Second Jung Decl. Even if a showing of extreme financial hardship were a rigid requirement for granting a stay—which it is not—Olivet University has adequately demonstrated that hardship.

### 3. The *Dillon* factors weigh in favor of granting a stay.

Although the plain language of Rule 62(b) (as amended) allows for either the posting of a bond *or* other adequate security, and despite the general consensus that district courts have broad discretion to accept alternative forms of security, some courts in the Tenth Circuit and elsewhere continue to employ the multi-factor balancing test developed before Rule 62(b) was amended in 2018 to authorize alternative forms of security. *E.g.*, *Becker*, 2022 WL 1403090, at *3 (citing the five-factor test developed in 1988 in *Dillon v. City of Chi.*, 866 F.2d 902, 904–05 (7th Cir. 1988)). Here, these factors weigh strongly in favor of a stay.

*Factor 1: Complexity of the collection process.* Plaintiff registered the judgment in the Central District of California, created a judgment lien on the main campus property by filing an Abstract of Judgment with the Riverside County Recorder, obtained a writ of execution, and posted a Notice of Levy upon the property. *See* Mot. to Stay at 2–3. Plaintiff has already undertaken nearly all steps needed to complete a sheriff's sale of the property and collect on the judgment. And as

demonstrated above, the value of the property far exceeds the value of the judgment. The relative ease with which Plaintiff can collect on the judgment via the lien counsels in favor of a stay.

*Factor 2: Amount of time required to obtain a judgment after it is affirmed on appeal.* Plaintiff does not address this factor, but it weighs strongly in favor a stay. If the judgment is affirmed, there would likely be no delay in Plaintiff's ability to execute on the judgment.

*Factor 3: Degree of confidence the court has in the availability of funds to pay the judgment.* As discussed above, Olivet University demonstrated that the value of the subject property far exceeds the judgment. Because funds from the sale of the property would pay the judgment, this factor supports a stay.

*Factor 4: Whether defendants' ability to pay the judgment is so plain that the cost of a bond would be a waste of money.* Because the equity value of the main campus property plainly exceeds the value of the judgment, requiring Olivet University to obtain a bond would be a waste of money.

*Factor 5: Whether defendants are in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.* Olivet University demonstrated its financial hardship and the gravity of its current financial situation. Requiring Olivet University to post a bond, or causing it to lose its main campus property, would negatively affect other creditors. Jung Decl. ¶ 6.

Each of these factors counsels in favor of granting a stay in this case.

4. **Alternatively, the Court should grant a stay limited to the sheriff's sale of the main campus property, as suggested by Plaintiff.**

Because Plaintiff's lien on Olivet's main campus property constitutes adequate security for the judgment, the Court should grant a stay. If the Court disagrees, however, Olivet University

requests in the alternative that the Court grant a stay as to the sheriff's sale of the main campus property only, as suggested by Plaintiff. *See* Opp'n at 10. This alternative would at least help prevent the ruinous outcome of a forced sale of the university's main campus while litigation is ongoing.

## Conclusion

Olivet University respectfully requests that the Court preserve the status quo during pendency of the motion to vacate by granting its Motion of Stay Proceedings to Enforce Judgment or, alternatively, limiting the stay to the sheriff's sale of the main campus property.

DATED this: 8th day of February, 2023.

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Nathan J. Marcusen*
Nathan J. Marcusen
Isaac W. Messmore
*Attorneys for Olivet University*