UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AVT-NEW YORK, L.P., a Utah limited partnership,<br><br>        Plaintiff,<br><br>v.<br><br>OLIVET UNIVERSITY, a California corporation,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STAY PROCEEDINGS TO ENFORCE JUDGMENT (DOC. NO. 178)**<br><br>Case No. 2:18-cv-00782<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Since 2019, the litigation in this case has centered around a default judgment entered against Olivet University in favor of AVT-New York, L.P. Olivet has now filed a motion to stay enforcement of the judgment.[1] Specifically, Olivet seeks an order staying enforcement or execution of the default judgment pending a ruling on a motion seeking to vacate it.[2] Olivet asks the court to grant a stay without requiring it to post a bond for the full judgment amount, arguing a lien held by AVT against Olivet's main campus property (the "Anza property") constitutes adequate security warranting a stay.[3] AVT opposes the motion.[4]

Rule 62(b) of the Federal Rules of Civil Procedure contemplates a stay by "bond or other security." Where Olivet has demonstrated the lien AVT holds against the Anza property is

---

[1] ("Mot.," Doc. No. 178.)

[2] (*Id.* at 1–2; *see also* Def.'s Mot. to Vacate Default J., Doc. No. 174.)

[3] (Mot. 4, Doc. No. 178.)

[4] (Mem. in Opp'n to Mot. to Stay Proceedings to Enforce J. ("Opp'n"), Doc. No. 184.)

1

adequate to satisfy AVT's judgment, and where the majority of the *Dillon* factors[5] weigh in favor of a stay, Olivet's motion is granted in part and denied in part.[6] The motion is granted to the extent enforcement proceedings regarding the sheriff's sale of the Anza property are stayed pending a decision on Olivet's motion to vacate the default judgment. But the motion is denied to the extent it seeks to stay the post-judgment discovery previously authorized by this court.[7]

## BACKGROUND

On October 5, 2018, AVT filed a complaint against Olivet, alleging breach of contract and breach of the covenant of good faith and fair dealing, among other claims.[8] On January 7, 2019, the court entered a default judgment against Olivet in the amount of $4,901,413.34.[9] On March 8, 2019, AVT registered the judgment in the Central District of California.[10]

Three months later, on June 24, 2019, Olivet moved to set aside the default judgment, arguing it was void, the court lacked jurisdiction, a hearing on damages was required, its counsel at the time of the judgment was ineffective, and the service of process was insufficient, among

---

[5] *See Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988).

[6] Oral argument is unnecessary; this decision is based on the parties' written memoranda. *See* DUCivR 7-1(g).

[7] (*See* Mem. Decision and Order Granting in Part and Den. in Part Pl.'s Ex. Parte Mot. for Disc. from Olivet ("Post J. Disc. Order 1"), Doc. No. 162; Mem. Decision and Order Granting in Part and Den. in Part Pl.'s Mot. for Disc. from Dover Greens, LLC ("Post J. Disc. Order 2"), Doc. No. 163.)

[8] (*See* Compl., Doc. No. 2.)

[9] (*See* J. Against Olivet Univ., Doc. No. 13; Corrected J. Against Olivet Univ., Doc. No. 24 (correcting judgment date only).)

[10] (Mot. 2, Doc. No. 178; Ex. 1 to Decl. of Daehong Jung in Support of Def.'s Mot. to Stay Proceedings to Enforce J. ("Jung Decl."), Clerk's Certification of a J. to be Registered in Another Dist., Doc. No. 179-1.)

other things.[11] AVT opposed the motion.[12] On August 1, 2019, the parties entered into a confidential forbearance agreement, which settled Olivet's motion to set aside the default judgment.[13] According to AVT, under the agreement, AVT agreed to forbear collection on the default judgment and Olivet agreed to make payments pursuant to a discounted monthly payment schedule, in addition to releasing all defenses to the judgment.[14] Based on the forbearance agreement, Olivet moved to dismiss its motion to set aside the default judgment with prejudice.[15] On August 6, 2019, the court dismissed the motion with prejudice.[16] AVT recorded an abstract of judgment that same day, filing a judgment lien against the Anza property.[17] The Anza property is located in California and serves as the main campus for Olivet University, housing roughly 100 students and several members of the faculty.[18]

AVT attests Olivet failed to make payments as required under the forbearance agreement.[19] As a result, AVT has made various efforts to collect on the judgment—including

---

[11] (Def.'s Mot. to Set Aside J., Doc. No. 40.)

[12] (Pl's Opp'n to Def.'s Mot. to Set Aside J., Doc. No. 54.)

[13] (*See* Mot. to Dismiss Def.'s Fed. R. Civ. P. 55 and 60(b) Mot. to Set Aside Default J. with Prejudice ("Mot. to Dismiss Mot. to Set Aside Default J. with Prejudice") 2, Doc. No. 63.)

[14] (Opp'n 1–2, Doc. No. 184; Ex. 1 to Opp'n, Decl. of Jason A. McNeill ("McNeill Decl.") ¶ 8, Doc. No. 184-1.)

[15] (Opp'n 2, Doc. No. 184; Mot. to Dismiss Mot. to Set Aside Default J. with Prejudice 3, Doc. No. 63.)

[16] (Order Dismissing Def.'s Mot. to Set Aside Default J. with Prejudice, Doc. No. 67.)

[17] (Opp'n 2, Doc. No. 184; Mot. 2, Doc. No. 178; Ex. 2 to Jung Decl., Abstract of J., Doc. No. 179-2); *see also* Cal. Code Civ. Proc. § 697.310(a) (stating "a judgment lien on real property is created . . . by recording an abstract of a money judgment with the county recorder").

[18] (Jung Decl. ¶ 8, Doc. No. 179.)

[19] (Opp'n 2, Doc. No. 184; Ex. 1 to Opp'n, McNeill Decl. ¶ 9, Doc. No. 184-1.)

conducting judgment-debtor examinations and issuing writs of garnishment—with little to no success.[20] AVT has also attempted to collect on the judgment by means of real estate owned by Olivet, namely, the Anza property.[21] These efforts were delayed due to restrictions put in place in California during the height of the COVID-19 pandemic.[22] Once the California restrictions were lifted, AVT resumed its collection efforts, including its efforts against the Anza property.[23] On November 18, 2022, AVT served Olivet with a notice of levy on the Anza property, indicating its intent to complete a sheriff's sale of the property.[24] Also on November 18, 2022, the court issued two discovery orders, permitting AVT to pursue limited post-judgment discovery from AVT and Dover Greens, LLC (a nonparty).[25]

On December 8, 2022, Olivet filed a motion to vacate the default judgment,[26] which AVT has opposed.[27] On December 30, 2022, Olivet filed the instant motion, seeking to stay all proceedings to enforce the default judgment pending a decision on the motion to vacate.[28] AVT

---

[20] (Opp'n 2, Doc. No. 184; Ex. 1 to Opp'n, McNeill Decl. ¶ 10, Doc. No. 184-1.)

[21] (*See* Opp'n 2, Doc. No. 184; Ex. 1 to Opp'n, McNeill Decl. ¶ 10, Doc. No. 184-1.)

[22] (Opp'n 2, Doc. No. 184; Ex. 1 to Opp'n, McNeill Decl. ¶ 10, Doc. No. 184-1.)

[23] (Opp'n 2, Doc. No. 184; Ex. 1 to Opp'n, McNeill Decl. ¶ 11, Doc. No. 184-1.)

[24] (Mot. 2, Doc. No. 178; Ex. 4 to Jung Decl., Notice of Levy, Doc. No. 179-4; Opp'n 10, Doc. No. 184.)

[25] (Post J. Disc. Order 1, Doc. No. 162; Post J. Disc. Order 2, Doc. No. 163.)

[26] (Doc. No. 174.)

[27] (Opp'n to Pl.'s Mot. to Vacate Default J., Doc. No. 191.)

[28] (Mot., Doc. No. 178.)

attests $5,913,389.74 remained due on the judgment as of January 1, 2023 (factoring in post-judgment interest but excluding attorney fees and costs).[29]

## LEGAL STANDARDS

Rule 62(b) provides, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security."[30] "The purpose of a stay is to preserve the status quo pending appeal."[31] Although a supersedeas bond for the full judgment amount "should be the requirement in normal circumstances,"[32] courts have "inherent authority to waive the requirement of a supersedeas bond or to reduce the amount of the bond to prevent irreparable harm to the judgment debtor."[33] Additionally, as of 2018, parties may secure judgments with a "bond or *other security*"; Rule 62 no longer contemplates only a supersedeas bond.[34]

---

[29] (Opp'n 3, Doc. No. 184; Ex. 1 to Opp'n, McNeill Decl. ¶ 16, Doc. No. 184-1.)

[30] Fed. R. Civ. P. 62(b).

[31] *Earthgrains Baking Cos. v. Sycamore Family Bakery, Inc.*, No. 2:09-cv-523, 2020 U.S. Dist. LEXIS 56694, at *4 (D. Utah Mar. 30, 2020) (unpublished) (citing *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996)).

[32] *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, No. 2:16-cv-00958, 2022 U.S. Dist. LEXIS 81261, at *4–5 (D. Utah May 4, 2022) (unpublished) (quoting *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986)).

[33] *Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, No. 2:17-cv-00032, 2020 U.S. Dist. LEXIS 152244, at *4–5 (D. Utah Aug. 20, 2020) (unpublished) (quoting *Am. Bank & Tr. Co. v. Bond Int'l Ltd.*, Case No. 06-cv-0317, 2007 U.S. Dist. LEXIS 29136, at *2 (N.D. Okla. April 19, 2007) (citing *Miami Int'l*, 807 F.2d at 873)).

[34] *Compare* Fed. R. Civ. P. 62(d) (2017), *with* Fed. R. Civ. P. 62(b) (2018) (emphasis added). In addition to changing the text of the rule as described above, other amendments required reorganizing and in some cases renumbering the rule. *See* 10 COLLIER ON BANKRUPTCY P. 7062.04 (16th ed. 2022) (summarizing the changes to Rule 62).

Following the 2018 amendment of Rule 62, some courts have articulated a new approach. For instance, the Seventh Circuit favors a flexible, balancing approach when assessing the adequacy of "other security," noting that "[u]nder the new rules, courts should be able to balance fairly the appellant-debtor's appeal rights with the lender-appellee's right to security pending appeal."[35] But the Tenth Circuit has not articulated a change in its approach to Rule 62. Relevant here, the Tenth Circuit has yet to address the circumstances under which a judgment lien on real property might constitute adequate "other security" under Rule 62(b) as amended. However, even after the 2018 amendments, courts have continued to look to the factors from *Dillon v. City of Chicago*[36] when deciding whether to waive the bond requirement in its entirety or to accept means of security other than a bond for the judgment amount.[37] These factors continue to provide a viable framework for assessing the adequacy of a security for purposes of Rule 62.

Under *Dillon*, courts consider: (1) the complexity of the collection process, (2) the amount of time required to obtain a judgment after it is affirmed on appeal, (3) the court's degree of confidence in the availability of funds to pay the judgment, (4) whether the judgment-debtor's

---

[35] *Deutsche Bank Nat'l Trust Co. v. Cornish*, 759 F. App'x 503, 510 (7th Cir. 2019) (unpublished). Applying this approach, the Seventh Circuit concluded "the newly expressed flexibility for the form of security to protect the appellee gives more explicit support for treating the property in a mortgage foreclosure appeal as sufficient security, at least as long as the property is occupied and cared for." *Id.*

[36] 866 F.2d 902 (7th Cir. 1988).

[37] *See Becker*, 2022 U.S. Dist. LEXIS 81261, at *5–6; *Hampton v. Barclays Bank Del.*, No. 18-4071, 2020 U.S. Dist. LEXIS 243469, at *13–14 (D. Kan. Dec. 29, 2020) (unpublished); *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua*, No. 1:15-cv-02120, 2019 U.S. Dist. LEXIS 229141, at *4 (D. Colo. May 21, 2019) (unpublished); *Fox v. Pittsburg State Univ.*, 319 F.R.D. 342, 343 (D. Kan. 2017); *United States v. Melot*, No. CV 09-0752 JH/WPL, 2012 U.S. Dist. LEXIS 99284, at *7 (D.N.M. May 23, 2012) (unpublished).

ability to pay is so plain, the cost of a bond would be a waste of money, and (5) whether the judgment-debtor's financial situation is so precarious, the bond requirement would place other creditors in an insecure position.[38] Both AVT and Olivet rely on the *Dillon* factors in their briefing. Where the Tenth Circuit has yet to articulate an alternative to the *Dillon* factors, and where both parties rely on these factors in their briefs, the *Dillon* factors are addressed here.

## ANALYSIS

Olivet argues the lien AVT holds on its Anza property constitutes adequate "other security" warranting a stay under Rule 62(b), and the *Dillon* factors weigh in favor of a stay.[39] Conversely, AVT argues its enforcement efforts should not be stayed because the value of the Anza property is insufficient to support the combined indebtedness recorded against it and the *Dillon* factors weigh against granting a stay.[40] AVT contends Olivet should be required to post a bond for the full judgment amount to secure a stay.[41] AVT also argues it should not be limited in its ability to engage in the post-judgment discovery previously authorized by the court, even if the sheriff's sale of the Anza property is stayed.[42] In its reply, Olivet suggests that even if the court declines to fully stay enforcement proceedings, it should stay the sale of the Anza property.[43]

---

[38] *Dillon*, 866 F.2d at 904–05.

[39] (*See* Mot., Doc. No. 178; Reply, Doc. No. 197.)

[40] (*See* Opp'n, Doc. No. 184.)

[41] (*See id.*)

[42] (*See id.* at 10.)

[43] (Reply 8–9, Doc. No. 197.)

Where the parties present conflicting evidence regarding the value and adequacy of the Anza property, this issue is addressed first, followed by analysis of the *Dillon* factors.

## I.     Value of the Anza Property

Olivet argues that where the Anza property is valued at more than ten million dollars, AVT's lien on the property constitutes adequate "other security" under Rule 62(b).[44] AVT contends Olivet did not meet its burden to show the value of the Anza property is sufficient to support the combined indebtedness recorded against it.[45]

AVT supports its argument with a preliminary title report prepared on January 5, 2023.[46] Based on this report, AVT contends the Anza property is subject to the following encumbrances (from most senior to least senior): (1) a mortgage with an outstanding balance of $3,400,000,[47] (2) a *lis pendens*, (3) a judgment lien held by Continental Bank in the amount of $775,643.70, (4) a judgment lien held by Bank of the West in the amount of $445,730.17, (5) AVT's judgment lien in the amount of $5,913,389.74,[48] and (6) a judgment lien held by Hitachi Capital American

---

[44] (Mot., Doc. No. 178; Jung Decl. ¶ 5, Doc. No. 179.)

[45] (Opp'n 4–7, Doc. No. 184.)

[46] (*See* Ex. 3 to Opp'n, Stewart Title Prelim. Title Report ("Prelim. Title Report") 4–5, Doc. No. 184-3.)

[47] The preliminary title report reflects a mortgage balance of $5,250,000. (Ex. 3 to Opp'n, Prelim. Title Report 4–5, Doc. No. 184-3.) Despite questioning the veracity of the evidence supporting Olivet's contention that only $3,400,000 remains on the mortgage, (*see* Opp'n 6, Doc. No. 184; Mot. 4, Doc. No. 178; Jung Decl. ¶ 6, Doc. No. 179), AVT uses the $3,400,000 figure in its calculations, (*see* Opp'n 6, Doc. No. 184). Where both parties base their calculations on the $3,400,000 mortgage amount, and considering the evidence Olivet presented in support of this balance, the court also relies on it. (*See* Ex. 3 to Second Jung Decl., CommerceWest Bank Mortgage Statement, Doc. No. 198-3.)

[48] The preliminary title report reflects the original judgment amount of $4,901,413.34, which does not include interest. (Ex. 3 to Opp'n, Prelim. Title Report 4–5, Doc. No. 184-3.) According to AVT, the amount due as of January 1, 2023, is actually $5,913,389.74. (*See* Opp'n

8

Corp. in the amount of $758,604.38.[49] Relying on these figures, AVT argues the Anza property is insufficient to satisfy the full judgment amount because it is subject to a combined indebtedness of $11,293,367.99[50]—$646,888.85 more than Olivet alleges the Anza property is worth.

Olivet maintains the Anza property is valued at $10,646,479.14[51] and supports this valuation with two declarations from its Chief Financial Officer, Daehong Jung, a 2014 appraisal of the property, and a declaration from Dan Paulus, a consultant specializing in complex commercial real estate.[52] After reviewing the 2014 appraisal, Mr. Paulus attested that property values for comparable properties have trended upward over the last nine years.[53] And in his declaration, Mr. Jung explained the current status of the encumbrances on the property. According to Mr. Jung, the judgment lien held by Bank of the West was satisfied in its entirety on September 22, 2021,[54] the lawsuit giving rise to the *lis pendens* was settled and dismissed,[55]

---

6, Doc. No. 184; Ex. 1 to Opp'n, McNeill Decl. ¶ 16, Doc. No. 184-1.) Where this is the figure used in both parties' calculations, the court also relies on this amount. (*See* Opp'n 6, Doc. No. 184; Reply 5, Doc. No. 197.)

[49] (*See* Ex. 3 to Opp'n, Prelim. Title Report 4–5, Doc. No. 184-3; *see also* Ex. 1 to Opp'n, McNeill Decl. ¶¶ 12–14, Doc. No. 184-1.)

[50] (Opp'n 6, Doc. No. 184.)

[51] (Reply 3, Doc. No. 197; Mot. 4, Doc. No. 178.)

[52] (*See* Ex. 1 to Decl. of Dan Paulus ("Paulus Decl."), Dan. A Paulus Curriculum Vitae, Doc. No. 199-1.)

[53] (*See* Paulus Decl., Doc. No. 199; *see also* Jung Decl. ¶ 5, Doc. No. 179; Ex. 1 to Second Decl. of Daehong Jung ("Second Jung Decl."), Doc. No. 198-1 at 4.)

[54] (Second Jung Decl. ¶ 9, Doc. No. 198; Ex. 2 to Second Jung Decl., Acknowledgment of Satisfaction of J., Doc. No. 198-2.)

[55] (Second Jung Decl. ¶ 4, Doc. No. 198.)

and the amounts due on the remaining encumbrances are less than reflected in the preliminary title report relied on by AVT.[56]

Olivet has presented evidence showing the Anza property is subject to the following encumbrances which are senior to AVT's lien: (1) a mortgage held by CommerceWest Bank with a remaining balance of $3,434,842 (as of January 4, 2023),[57] and (2) a judgment lien held by Continental Bank which is subject to a forbearance agreement, with a remaining balance of $244,382.[58] AVT's judgment lien in the amount of $5,913,389.74[59] has next priority, followed by a judgment lien held by Mitsubishi HC Capital America (formerly, Hitachi Capital American Corp.) which is subject to a forbearance agreement with a remaining balance of $66,000 (junior to AVT's lien).[60] Based on these figures, the total indebtedness of all other encumbrances on the property equals $3,745,224, and the indebtedness of encumbrances senior to AVT's lien equals $3,679,224.[61] Olivet contends $6,967,255.14 of unencumbered equity[62] remains available to

---

[56] (Reply 4–5, Doc. No. 197.)

[57] (Ex. 3 to Second Jung Decl., CommerceWest Bank Mortgage Statement, Doc. No. 198-3.)

[58] (Second Jung Decl. ¶ 5, Doc. No. 198; Ex. 3 to Opp'n, Prelim. Title Report 4–5, Doc. No. 184-3.)

[59] Despite arguing AVT's calculation of the amount due on the existing judgment is inflated, Olivet includes AVT's claimed amount in its calculations. (*See* Opp'n 5, Doc. No. 197.) Because both parties rely on this figure and because the judgment amount is not an issue currently before the court, the court relies on this figure for purposes of this order.

[60] (Second Jung Decl. ¶ 6, Doc. No. 198; Ex. 3 to Opp'n, Stewart Title Prelim. Title Report 4–5, Doc. No. 184-3.)

[61] (*See* Reply 5, Doc. No. 197.)

[62] Where Olivet contends AVT's calculation of the amount due on the existing judgment is inflated, this figure could increase. (*See* Opp'n 5, Doc. No. 197.)

10

satisfy AVT's $5,913,389.74 judgment, even after accounting for the more senior encumbrances.[63]

After considering the competing evidence, the court accepts the evidence presented by Olivet as sufficient to show the Anza property is valued at $10,646,479.14, and adequate unencumbered equity exists to satisfy AVT's judgment. This evidence is next addressed in light of the *Dillon* factors.[64]

## II.     The *Dillon* Factors

Assessing the evidence in light of the *Dillon* factors, the only factor weighing against a stay is the complexity of the collection process. However, the remaining factors (time required to obtain a judgment; confidence in the availability of funds to pay the judgment; whether Olivet's ability to pay is so plain, the bond would be a waste of money; and whether Olivet's financial situation is so precarious, the bond requirement would leave other creditors in an insecure position) weigh in favor of a stay.

Only the first *Dillon* factor, the complexity of the collection process, weighs against a stay. AVT argues that without a full bond, the collection process will be "incredibly complex" in light of "current real estate valuations," "the less-than-ideal conditions of a forced sale," and the mortgage and other liens on the Anza property, some of which are senior to AVT's.[65] AVT

---

[63] (*See* Reply 5, Doc. No. 197.)

[64] It is not clear an analysis of the *Dillon* factors is necessary under Rule 62(b) as amended, where Olivet has shown the Anza property is sufficient to satisfy the judgment in full. After all, Rule 62(b) now "makes explicit the opportunity to post security in a form other than a bond," without qualification. (*See* 10 COLLIER ON BANKRUPTCY P. 7062.04.) Nevertheless, in the absence of Tenth Circuit guidance as to the application of the amended rule, the *Dillon* factors are addressed.

[65] (Opp'n, 9, Doc. No. 184.)

further contends the possibility of action by state or federal authorities related to ongoing criminal investigations against Olivet may further complicate the collection process.[66] Olivet counters, arguing AVT "has already undertaken nearly all steps needed to complete a sheriff's sale of the property and collect on the judgment," including registering the judgment in the Central District of California, creating a judgment lien by filing an abstract of judgment with the Riverside County recorder, obtaining a writ of execution, and posting a notice of levy on the property.[67]

While AVT has completed most of the steps required to effect a sheriff's sale, there is no question the process will be complex where a mortgage and a senior lien remain on the property. In other words, even though Olivet presented evidence showing several of the encumbrances on the Anza property have been resolved or reduced, the collection process will be complicated where AVT's lien does not hold first priority. For instance, as AVT notes, its collection attempts would be hindered if the mortgagor or senior lienholder proceeded against the Anza property while AVT was stayed from pursuing its own collections.[68] Accordingly, this factor weighs against a stay.

Second, the time required to obtain a judgment after it is affirmed weighs in favor of a partial stay. The parties provide no meaningful argument on this factor. AVT fails to address this factor at all, and Olivet offers only conclusory statements, asserting it "weighs strongly in

---

[66] (*See id.*)

[67] (Reply 7, Doc. No. 197; *see also* Ex. 1 to Jung Decl., Clerk's Certification of a J. to be Registered in Another Dist., Doc. No. 179-1; Ex. 2 to Jung Decl., Abstract of Judgment, Doc. No. 179-2); *see also* Cal. Code Civ. Proc. § 697.310(a); (Ex. 4 to Jung Decl., Notice of Levy, Doc. No. 179-4; Opp'n 10, Doc. No. 184.)

[68] (*See* Opp'n 7 n.4, Doc. No. 184.)

favor of a stay" and "there would likely be no delay in [AVT]'s ability to execute on the judgment."[69] Notwithstanding the lack of argument, this factor weighs in favor of a partial stay. Both parties raised the possibility of a limited stay—a stay of the sheriff's sale only—as opposed to a complete stay of all enforcement proceedings.[70] A limited stay of this nature would permit AVT to continue to pursue post-judgment discovery (which may lead to alternative means of collection), decreasing any delay if the judgment is affirmed. Accordingly, this factor weighs in favor of a partial stay.

The third and fourth factors involve the court's confidence in the availability of funds to pay the judgment and Olivet's ability to pay. These related factors are considered together, and weigh in favor of a partial stay. AVT argues Olivet has not provided enough evidence to allow the court to assess Olivet's ability to pay or the sufficiency of its equity in the Anza property to satisfy the judgment.[71] Olivet argues that where its equity in the property "plainly exceeds the value of the judgment, requiring Olivet [] to obtain a bond would be a waste of money."[72] The evidence Olivet presented in support of this argument supports a finding that Olivet's unencumbered interest in the Anza property is adequate to satisfy the judgment. Accordingly, the third and fourth *Dillon* factors weigh in favor of a stay. To the extent there is any question

---

[69] (Reply 8, Doc. No. 197.)

[70] (*See* Opp'n 10, Doc. No. 184 ("[I]f the Court finds that there is sufficient basis to grant a stay . . . the Court should limit any such stay to just the sheriff's sale of the Anza Property," rather than limiting "AVT's ability to, for instance, obtain discovery through the Discovery Orders."); Reply 8–9, Doc. No. 197 ("Olivet University requests in the alternative that the Court grant a stay as to the sheriff's sale of the main campus property only, as suggested by Plaintiff.").)

[71] (Opp'n 9–10, Doc. No. 184.)

[72] (Reply 8, Doc. No. 197.)

about Olivet's other assets, a partial stay would permit AVT to continue with post-judgment discovery, which may lead to other avenues of collection.

The final *Dillon* factor likewise weighs in favor of a stay. Olivet has shown its financial situation is so precarious that its other creditors would be placed in an insecure position if Olivet were made to post a bond. AVT contends the lack of information regarding Olivet's ability to pay the judgment precludes a finding with respect to this factor.[73] AVT characterizes Mr. Jung's statement that Olivet "will face extreme financial hardship" if required to obtain a monetary bond as "conclusory," arguing it is insufficient to establish Olivet's financial situation.[74] AVT also challenges Mr. Jung's credibility generally.[75] Conversely, Olivet argues it has "demonstrated its financial hardship and the gravity of its current financial situation."[76] In two separate declarations, Mr. Jung attests Olivet "will face extreme financial hardship" if made to post a bond.[77] And he opines a forced sale of the Anza property "would be potentially ruinous to Olivet,"[78] and "would negatively affect other creditors."[79]

As Olivet's Chief Financial Officer, Mr. Jung is qualified to report on the organization's overall financial situation. And although AVT questions Mr. Jung's credibility, it does so solely based on claims of "ongoing criminal investigations," without explaining the status of such

---

[73] (Opp'n 10, Doc. No. 184.)

[74] (*Id.* at 7–8 (quoting Jung Decl. ¶ 9, Doc. No. 179).)

[75] (*See id.* at 5, 7, 10.)

[76] (Reply 8, Doc. No. 197.)

[77] (Jung Decl. ¶ 9, Doc. No. 179.)

[78] (*Id.* at ¶ 10.)

[79] (Second Jung Decl. ¶ 7, Doc. No. 198.)

investigations or how they relate to Mr. Jung personally.[80] Where Mr. Jung's statements were made under penalty of perjury, and his position would permit personal knowledge of the matters on which he opines, his statements are taken at face value.[81] Mr. Jung's statements, taken together with the other evidence discussed above, illustrate Olivet's bleak financial position. Accordingly, this factor weighs in favor of a stay.

Where the majority of the *Dillon* factors weigh in favor of at least a partial stay and considering the court's discretion to determine what constitutes adequate security for a stay,[82] a stay of enforcement proceedings related to the Anza property is warranted. However, post-judgment discovery may proceed.

## CONCLUSION

Where Rule 62(b) contemplates a stay by "bond or other security," Olivet has demonstrated the Anza Property is adequate to satisfy the judgment, and the majority of the *Dillon* factors weigh in favor of at least a partial stay, the motion[83] is granted in part and denied in part. The court orders as follows:

1. Enforcement proceedings related to the sheriff's sale of the Anza property are stayed pending a decision on Olivet's motion to vacate the default judgment.

---

[80] (*See* Opp'n 5, Doc. No. 184.) AVT cites to three news articles reporting on criminal investigations launched against Olivet University. (*Id.* at 5 n.2.) Without more, this is insufficient to call into question Mr. Jung's credibility.

[81] *Cf. Miami Int'l*, 807 F.2d at 872 (upholding a district court's grant of a stay where the district court assumed the veracity of a "somewhat conclusionary" affidavit regarding the defendant's ability to post the full amount of the bond).

[82] *See Becker*, 2022 U.S. Dist. LEXIS 81261, at *5; *Utah Physicians for a Healthy Env't, Inc.*, 2020 U.S. Dist. LEXIS 152244, at *4–5.

[83] (Doc. No. 178.)

2. The stay is denied as to post-judgment discovery. AVT may proceed with post-judgment discovery consistent with the court's prior orders.

DATED this 14h day of March, 2023.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

16